**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT WILLIAM GODWIN,

    Petitioner,

v().                                         Case No.:    3:12-cv-1387-J-32TEM
                                                                  3:08-cr-316-J-32TEM

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

    This case is before the Court on Petitioner Robert William Godwin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) and Memorandum of Law (Doc. 2).[1] The government filed a Motion to Dismiss for untimeliness. (Doc. 11). Petitioner filed a Response to the government's Motion to Dismiss. (Doc. 12). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.

**I.    Procedural History**

    On August 28, 2008, a grand jury sitting in the Middle District of Florida indicted Petitioner on one count of violating 18 U.S.C. § 2422(b) for using a computer via the internet to knowingly, willfully, and intentionally attempt to persuade,

---

[1] Citations to Petitioner's criminal case file, <u>United States of America v. Robert William Godwin</u>, 3:08-cr-316-J-32TEM, are denoted as "Crim. Doc. ____." Citations to Petitioner's civil § 2255 case file, 3:12-cv-1387-J-32TEM, are denoted as "Doc. ____."

1

induce, entice, and coerce a person whom the defendant believed to be under the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense under Florida law – specifically, lewd or lascivious battery upon a person under the age of 16 years in contravention of Florida Statutes sections 800.04(4)(a) and 800.04(4)(b).  (Crim. Doc. 1).  Petitioner was convicted of the same offense on March 5, 2009 following a jury trial.  (Crim. Doc. 79).  The Court sentenced Petitioner to 121 months' imprisonment followed by a lifetime term of supervised release.  (Crim. Doc. 93).

Petitioner appealed his conviction and sentence to the Eleventh Circuit Court of Appeals, challenging (1) the sufficiency of the evidence, (2) the exclusion of expert testimony from a forensic psychologist, (3) the denial of a motion to suppress post-arrest statements, and (4) the admission at trial of a videotape and transcript of a post-arrest interview.  United States v. Godwin, 399 F. App'x 484, 486 (11th Cir. 2010).  The Eleventh Circuit concluded that each of Petitioner's arguments were either waived or lacked merit, and so affirmed his conviction and sentence.  Id. at 490.

## II.   Petitioner's Motion to Vacate

The Eleventh Circuit rendered its judgment on October 7, 2010.  Petitioner did not request certiorari review from the Supreme Court.  Thus, Petitioner's conviction and sentence became final on January 5, 2011, upon the expiration of the 90-day period for seeking certiorari review.  Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002).  Petitioner had one year from that date, or until January 5, 2012, to

file a motion to vacate under 28 U.S.C. § 2255(f)(1). Petitioner filed his Motion to Vacate on December 17, 2012, and is therefore untimely under 28 U.S.C. § 2255(f)(1).

Petitioner contends that the Motion is timely under 28 U.S.C. § 2255(f)(3) as having been filed within one year from the date on which the rights he asserts were initially recognized by the Supreme Court. Petitioner also contends that the one-year period under § 2255(f)(3) should be equitably tolled because his prison law library does not receive new cases until six months after their publication. Thus, Petitioner hopes to combine § 2255(f)(3) and equitable tolling to make his Motion timely.[2]

Petitioner makes four claims between his Motion to Vacate and Memorandum: (1) in Grounds One and Two, that the Court lacked jurisdiction to sentence him because 18 U.S.C. § 2422(b), facially and as applied, exceeds Congress' Commerce Clause power; (2) in Ground Three, that Dorsey v. United States, 132 S. Ct. 2321 (2012), retroactively gives Petitioner the right to a lower sentence; (3) in Ground Four, that it was "unnecessary" for the Court to sentence him to a lifetime term of supervised release following his term in prison; and (4) in his Memorandum, that the requirement that Petitioner register as a sex offender pursuant to the Sex Offender Registration and Notification Act ("SORNA"), codified at 42 U.S.C. § 16901, et seq., exceeds Congress' Commerce Clause power. (Doc. 1 at 4-6; Doc. 2 at 10-11).

As to Petitioner's claims that 18 U.S.C. § 2422(b) and the registration requirement under SORNA exceed Congress' commerce clause power, the Court will not consider the claims time-barred because jurisdictional claims cannot be

---

[2] Petitioner does not argue that cause-and-prejudice or actual innocence excuses his procedural default.

3

procedurally defaulted. Both the Supreme Court and the Eleventh Circuit Court of Appeals have explicitly recognized that challenges to a court's subject matter jurisdiction cannot be waived, forfeited, or procedurally barred. United States v. Cotton, 535 U.S. 625, 630 (2002) (stating that subject matter jurisdiction can never be forfeited or waived because it involves a court's power to hear a case); United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) (jurisdictional error "can never be waived by parties to litigation"). The Court will consider the merits of Petitioner's challenge to 18 U.S.C. § 2422(b) but, as explained below, concludes that it lacks jurisdiction under 28 U.S.C. § 2255 to vacate Petitioner's obligation to register as a sex offender under SORNA.

As to the challenges Petitioner raises in Grounds Three and Four to his sentence, the Court finds that they are time-barred under 28 U.S.C. § 2255(f)(1). Dorsey does not recognize a new, retroactively applicable rule of constitutional law, and thus the statute of limitations under 28 U.S.C. § 2255(f)(3) is unavailing.[3]

---

[3] Because the Court ultimately concludes that § 2255(f)(3)'s alternative statute of limitations is inapplicable, nor can equitable tolling apply to § 2255(f)(3). Moreover, several courts have held that limited access to materials in a prison law library is insufficient to warrant equitable tolling. See, e.g., Maxey v. Sec'y, Fla. Dep't of Corr., 2012 WL 3000208 at *3 (N.D. Fla. June 22, 2012) (petitioner's claim that he was incarcerated at several different facilities and lacked adequate access to the law libraries "is not a valid cause for failing to file the [§ 2255] Petition within AEDPA's one year statute of limitations period as 'neither an alleged inadequate prison law library, nor limited access to the library establishes extraordinary circumstances warranting an equitable tolling of the limitation period.'") (quoting Knight v. Sec'y, Fla. Dep't of Corr., 2011 WL 3349042 at *4 (M.D. Fla. Aug. 3, 2011)); Williams v. United States, 2011 WL 1878124 at *3 (S.D. Fla. Apr. 25, 2011) (petitioner's prisoner status and the realities of incarceration are not extraordinary circumstances sufficient to apply equitable tolling).

4

### III.   Discussion

### A. Whether 18 U.S.C. § 2422(b), facially or as applied, exceeds Congress' authority to regulate interstate commerce

Title 18, United States Code, Section 2422(b) makes it a federal crime to use the internet to knowingly attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity. The law does not require that a defendant send a communication via the internet to a person in a different state. Rather, it is sufficient under the terms of § 2422(b) that a defendant use the internet to attempt to induce or coerce a minor to engage in unlawful sexual activity, even if the minor is in the same state as the defendant. In Petitioner's case, he e-mailed sexually explicit messages from his computer, in Florida, to an undercover law enforcement officer, also in Florida, who was posing as a 14-year-old girl. Petitioner contends that the law, both categorically and when applied to him, criminalizes purely intrastate conduct and is therefore beyond the reach of Congress' authority to regulate interstate commerce.

Eleventh Circuit precedent forecloses Petitioner's argument. United States v. Faris, 583 F.3d 756, 758-59 (11th Cir. 2009) (superseded on other grounds as stated in United States v. Jerchower, 631 F.3d 1181, 1184 (11th Cir. 2010)); United States v. Hornaday, 392 F.3d 1306, 1310-11 (11th Cir. 2004). Faris involved materially indistinguishable facts, in which a defendant who resided in Tallahassee, Florida was convicted of violating § 2422(b) based on messages sent to an undercover police officer also located in Tallahassee, Florida. Faris, 583 F.3d at 758. The defendant argued that because his conduct was confined to Florida, his conviction under § 2422(b) was

5

unconstitutional under the Commerce Clause. The Eleventh Circuit rejected that argument, stating:

> [The Commerce Clause power] includes the power to regulate and protect the "instrumentalities of interstate commerce," even when the targeted "threat may come only from intrastate activities." United States v. Lopez, 514 U.S. 549, 558, 115 S.Ct. 1624, 1629, 131 L.Ed.2d 626 (1995). It also includes prohibiting the use of commercial instrumentalities for harmful purposes even if the targeted harm "occurs outside the flow of commerce" and "is purely local." United States v. Ballinger, 395 F.3d 1218, 1226 (11th Cir.2005) (en banc).
>
> The internet is "an instrumentality of interstate commerce." Hornaday, 392 F.3d at 1311. Congress "has the power to regulate the internet" and "to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact." Id. "Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children through intermediaries ...." Id.
>
> Faris' Commerce Clause argument fails for two reasons. First, our precedent forecloses it. We have held that 18 U.S.C. § 2422(b) does not exceed Congress' commerce power. Hornaday, 392 F.3d at 1310–11. Second, Faris' argument is inconsistent. He concedes that his internet communications crossed state boundaries but asserts that Congress cannot regulate those interstate communications. <u>Even if none of Faris' communications were routed over state lines, the internet and telephone he used to contact the undercover officer were still "instrumentalities of interstate commerce."</u> Lopez, 514 U.S. at 558, 115 S.Ct. at 1629; Ballinger, 395 F.3d at 1226. Therefore, 18 U.S.C. § 2422(b) does not, as applied here, violate the Commerce Clause.

Faris, 583 F.3d at 758-59 (emphasis added).

At Petitioner's trial, the government established a nexus with interstate commerce through a forensic examiner who testified that the servers for Petitioner's Yahoo email account – the same account used to contact the fictitious 14-year old – were located in Sunnyvale, California. (Crim. Doc. 102 at 162). Even without this fact, Faris clarified that the internet is a facility of interstate commerce, and Congress' plenary power under the Commerce Clause authorizes it to prevent the

6

injurious or harmful uses of the internet, as well as other instrumentalities or channels of interstate commerce, even where communications are not routed over state lines. Id. at 759. Accordingly, Petitioner's claim that the Court lacked jurisdiction to sentence him for violating 18 U.S.C. § 2422(b) because the statute exceeds Congress' Commerce Clause power, where he sent communications from his computer in Florida to an undercover officer in the same state, lacks merit. Faris and cases before it hold that Congress has ample power to punish the type of conduct in which Petitioner engaged.

### B. Whether Dorsey v. United States gives Petitioner the right to a reduced sentence

Petitioner contends that the Supreme Court's decision in Dorsey v. United States means he could have received a lower sentence, and "[s]ince Movant could potentially have gotten a lesser sentence, this amounts to a due process violation since the Sentencing Judge was unaware that he could impose a lower sentence." (Doc. 2 at 9). Petitioner further contends that the Supreme Court's decision in Dorsey extended the statute of limitations for filing a motion to vacate under 28 U.S.C. § 2255(f)(3). A one-year limitation period for filing a motion to vacate runs from the latest of one of four events, including "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

The Court need not consider the merits of this claim because Dorsey does not trigger the alternative statute of limitations under § 2255(f)(3), and Petitioner's

7

motion is otherwise untimely.  In <u>Dorsey</u>, the Supreme Court decided that the Fair Sentencing Act applies to defendants convicted of crack cocaine offenses where the defendant's conduct occurred before the Act's effective date but the sentencing occurred after the effective date.  132 S. Ct. at 2331.  <u>Dorsey</u> is a case of statutory interpretation, in which the Supreme Court reconciled apparently conflicting provisions in various federal sentencing statutes.  <u>Dorsey</u> did not recognize a new rule of constitutional law, nor has the Supreme Court or the Eleventh Circuit held that <u>Dorsey</u>'s holding is retroactively applicable on collateral review.  <u>Williams v. United States</u>, 2012 WL 4792910 at *2 n. 3 (M.D. Fla. October 9, 2012) ("Petitioner cannot rely on 28 U.S.C. § 2255(f)(3)… as <u>Dorsey</u> has no application to this case nor has it been held to be retroactive on collateral review.").  Moreover, <u>Dorsey</u> was limited to the crack-cocaine sentencing context, and has no applicability to prisoners, like Petitioner, who have been sentenced for committing a federal sex offense.  Accordingly, the Court concludes that Petitioner cannot use <u>Dorsey</u> to rely on § 2255(f)(3)'s alternative statute of limitations.  Because Petitioner filed his Motion to Vacate well over a year after his conviction and sentence became final, this claim is due to be dismissed as time-barred under § 2255(f)(1).

**C. Whether the Court's decision to sentence Petitioner to a lifetime term of supervised release was "unnecessary"**

Petitioner contends that his sentence to a lifetime term of supervised release is greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a), and thus should be reduced or eliminated. (Doc. 2 at 10).  Petitioner argues that "[e]mpirical data shows that most sex offenders have low rates of recidivism,

8

with those convicted of crimes involving teenaged girls being the least likely to reoffend amongst the various types of sex offenses." (Id. at 9).[4] Petitioner's challenge to his sentence is not jurisdictional, nor is it based on any newly discovered factual predicate or retroactively applicable decision newly recognizing a constitutional right. Accordingly, this claim is also due to be dismissed as time-barred under § 2255(f)(1).

**D. Whether Petitioner's requirement to register as a sex offender with SORNA exceeds Congress' Commerce Clause authority**

Lastly, Petitioner contends that the requirement to register as a sex offender under SORNA is unconstitutional because SORNA exceeds Congress' authority to regulate interstate commerce. The Court does not consider this claim time-barred because it relates to subject-matter jurisdiction, and such challenges cannot be procedurally defaulted. Cotton, 535 U.S. at 630; Peter, 310 F.3d at 712. However, the Court lacks jurisdiction under 28 U.S.C. § 2255 to grant relief from the sex offender registration requirement because such a requirement is not a part of Petitioner's sentence that renders him "in custody" for purposes of § 2255.

In Virsnieks v. Smith, 521 F.3d 707 (7th Cir.2008), the Seventh Circuit examined the text of § 2255's state-prisoner corollary, 28 U.S.C. § 2254[5], and

---

[4] Petitioner mentions, in a passing conclusory statement, that sentencing a sex offender to a lifetime term of supervised release violates equal protection. (Doc. 2 at 10). However, Petitioner does not develop the argument any further, and so the claim does not merit discussion.

[5]   Section 2255 does not contain the same precise "in custody" language as § 2254. Compare 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States… may move the court which imposed the sentence to vacate, set aside or correct the sentence.") with 28 U.S.C. § 2254(a) ("…[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

concluded that its language precludes courts from reviewing a challenge to a non-custodial portion of a criminal sentence:

> Section 2254 authorizes federal courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only on the ground that he is in custody</u> in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The plain language of the statute therefore commands that courts entertain habeas petitions "only" on the ground that a prisoner is "in custody," and, by linking a court's ability to entertain a habeas petition to the particular relief sought, the language of the statute prevents consideration of pendent challenges.

Id. at 721. The Seventh Circuit thus held that a petitioner's constitutional challenge to the noncustodial component of his sentence, in that case that the petitioner register as a sex offender, was insufficient to create a cognizable claim under § 2254 so long as the registration requirements were not so onerous as to amount to custody. Id. at 717, 722. The court explained that while the Supreme Court has expanded the definition of "custody" for the purposes of habeas jurisdiction, the Court has also "emphasized the physical nature of the restraints on liberty that satisfied the custody requirement." Id. at 718 (collecting cases). "Thus, the collateral consequences of a conviction, those consequences with negligible effects on a petitioner's physical liberty of movement, are insufficient to satisfy the custody requirement." Id. Where a state's

---

Despite this difference, the grounds for relief available under § 2255 and § 2254 are identical. Davis v. United States, 417 U.S. 333, 344 (1974) ("Thus, there can be no doubt that the grounds for relief under [§] 2255 are equivalent to those encompassed by [§] 2254, the general federal habeas corpus statute, under which relief is available on the ground that '(a person) is in custody in violation of the Constitution or laws or treaties of the United States'… No miscroscopic reading of [§] 2255 can escape either the clear and simple language of [§] 2254 authorizing habeas corpus relief 'on the ground that (the prisoner) is in custody in violation of the . . . laws . . . of the United States' or the unambiguous legislative history showing that [§] 2255 was intended to mirror [§] 2254 in operative effect."). Therefore, while the Court is unaware of precedent addressing whether a petitioner' challenge to sex offender registration requirements is cognizable under § 2255, those decisions addressing the same issue in the § 2254 context are equally applicable.

10

sex offender registration statute does not restrict a petitioner's freedom of movement, though it may require him to periodically update his information by mail or telephone, the registration requirement "imposes minimal restrictions on a registrant's physical liberty of movement." Id. at 719-20.

The Sixth Circuit Court of Appeals reached the same conclusion in Leslie v. Randle, 296 F.3d 518 (6th Cir. 2002). There, the petitioner filed a motion to vacate while still incarcerated in order to challenge the application of Ohio's sex offender registration requirement upon his release. Id. at 520. The court held that the requirement to register as a sex offender would not render him "in custody" for the purpose of being able to challenge whether he was "in custody in violation of the Constitution or laws of the United States" under 28 U.S.C. § 2254. Leslie, 296 F.3d at 523. In so holding, the court explained that "'[t]he custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe constraints on individual liberty[,]'" and, "[a]s a result, 'its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.'" Id. at 521 (quoting Hensley v. Municipal Court, 411 U.S. 345, 351 (1973)). Because Ohio's sex offender registration scheme placed no constraints on the petitioner's movement, did not condition the petitioner's ability to move to a different community on the government's approval, and did not condition the petitioner's continued freedom on remaining employed or refraining from legal activities, but only required the petitioner to register with his county sheriff and keep current a variety of identifying

11

information, the Sixth Circuit found that the registration requirement was a non-custodial portion of his sentence that the petitioner could not challenge through a motion to vacate. Leslie, 296 F.3d at 522-23.

The Fourth Circuit Court of Appeals has also determined that mandatory sex offender registration does not satisfy the "in custody" requirement for habeas jurisdiction. In Wilson v. Flaherty, 689 F.3d 332 (4th Cir. 2012), the Fourth Circuit concluded that a petitioner could not use a motion to vacate under 28 U.S.C. § 2254 to challenge the requirement to register as a sex offender because "the sex offender registration requirements of Virginia and Texas are collateral consequences of his conviction that are independently imposed on him because of his status as a convicted sex offender and not as part of his sentence." Wilson, 689 F.3d at 333. Observing that "every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not," the Fourth Circuit noted that "they have all agreed that sex offender registration requirements, whether they require in-person registration or allow registration by mail or electronic means, do not constitute physical constraints." Id. at 337-38 (collecting cases). Thus, the Fourth Circuit concluded that the sex offender registration requirements of Texas and Virginia did not place the petitioner in custody for the purpose of habeas jurisdiction, even though he was required to register in person upon his release from prison, reregister every 90 days, as well as to reregister in person for any changes in residence, employment, vehicle ownership, or online contact information. Id. at 335, 339.

The sex offender registration requirements imposed by SORNA and Florida law are not so onerous as to place Petitioner "in custody" for purposes of habeas jurisdiction. SORNA requires a sex offender to register and to keep the registration current in each jurisdiction where he resides, works, is a student, or was convicted if that jurisdiction is different from his residence. 42 U.S.C. § 16913(a). The offender must also appear in person in at least one of the relevant jurisdictions to notify authorities of any change of name, address, employment, or student status no more than three days after such change. 42 U.S.C. § 16913(c). Under Florida law, an offender must register in person with the sheriff's office in the county where (s)he establishes or maintains permanent, temporary, or transient residence within 48 hours of either establishing such residence or being released from custody. F.S. § 943.0435(2)(a). The offender must also maintain a driver's license or identification card, notify the sheriff's office of where the offender lives, works, and attends school, as well as provide identifying information about himself, his residence, phone numbers, email addresses, and any instant messaging names. F.S. §§ 943.0435(2)-(3). Neither SORNA nor Florida law restricts an offender's freedom of movement, requires him to obtain the government's approval before locating or re-locating somewhere, or conditions an offender's continued liberty on remaining employed or refraining from lawful activities. Accordingly, these requirements are comparable to those in <u>Versniek</u>, <u>Leslie</u>, and <u>Wilson</u>, which were found not to restrain a petitioner's liberty to such an extent as to render him "in custody" for purposes of federal habeas jurisdiction. Because the sex offender registration requirement is non-custodial in

nature, the Court lacks jurisdiction under 28 U.S.C. § 2255 to entertain a challenge to this portion of Petitioner's sentence. Accordingly, the Court dismisses Petitioner's request to vacate the sex offender registration requirement.

### E. Petitioner's request to re-construe his Motion to Vacate

In his Response, Petitioner asks the Court to re-construe his Motion to Vacate as a petition for a writ of audita querela, coram nobis, "or any other avenue that would grant relief." (Doc. 12 at 9). With respect to all but Petitioner's SORNA claim, Petitioner is not entitled to have his claims recharacterized because the type of relief sought – vacatur of his conviction and sentence – was cognizable under § 2255, and the claims simply failed on the merits or were untimely. See, e.g., United States v. Holt, 417 F.3d 1172, 1175 (11th Cir. 2005) ("a writ of audita querela may not be granted when relief is cognizable under § 2255"); United States v. Valdez-Pacheco, 237 F.3d 1077, 1080 (9th Cir. 2001) (a "prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs."). Thus, the Court declines to re-characterize Petitioner's motion to vacate.

Petitioner's challenge to SORNA is different because, as discussed above, the Court has found that the relief sought – vacating the requirement to register as a sex offender – is not cognizable under § 2255. Nevertheless, the Court finds that none of the extraordinary writs, even if granted, would afford Petitioner relief because subsequent to filing his Motion to Vacate and Response, the Supreme Court rejected

14

the same contention made by Petitioner that SORNA exceeds Congress' regulatory authority. In United States v. Kebodeaux, 133 S. Ct. 2496 (2013), the Court held that SORNA is a constitutional exercise of Congress' regulatory power under the Necessary and Proper Clause when applied to those convicted of federal sex offenses. Id. at 2500. The Court explained that it was "eminently reasonable" for Congress to impose civil registration requirements on those released from custody after committing a federal sex offense because of the desire to "protect the public from those federal sex offenders and alleviate public safety concerns." Id. at 2503. Thus, Petitioner's claim that SORNA exceeds Congress' Commerce Clause power would ultimately fail on the merits. For the Court to identify a way to recharacterize this challenge would be an exercise in vain.

Accordingly, it is hereby

**ORDERED:**

1. To the extent he challenges the Court's jurisdiction to sentence him for violating 18 U.S.C. § 2422(b), Petitioner Robert William Godwin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1; Crim. Doc. 120) is **DENIED**.

2. In all other respects, Petitioner Robert William Godwin's Motion to Vacate (Doc. 1; Crim. Doc. 120) is **DISMISSED**.

3. The Clerk shall enter judgment in favor of the United States and against Robert William Godwin, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has not absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of December, 2014.

*/s/ Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se party